## Hamilton Mutual Insurance Company *vs.* Peter Hobart, Jr.

An act of the legislature, by which "the members of" several mutual fire insurance companies are made a new corporation, and which "shall not affect the legal rights of any person," and is to take effect "when accepted by the members of said corporations," does not constitute a member of one of the old companies, who does not expressly assent to it, a member of the new corporation, although the act be duly accepted by a majority of the members of each of the old companies.

Action of contract. The parties stated the following case. The defendant procured from the Bowditch Mutual Fire Insurance Company a policy of insurance on property in Boston, dated July 1st 1851, for the term of three years, and expressed to be in consideration (among other things) " of the annual premium of twelve dollars to be paid on or before the first day of July in every year during the continuance of this policy." The defendant paid the premium for the first year. And this suit is brought to recover the second and third annual premiums, less the annual dividends.

On the 10th of February 1852, the legislature passed the following act: " Section 1. The members of the Bowditch Mutual Fire Insurance Company, and of the Essex Mutual Fire Insurance Company, both established in Salem, and the members of the Lawrence Mutual Fire Insurance Company, established in Lawrence, are hereby made a corporation, by the name of the Hamilton Mutual Insurance Company, in Salem, for the term of twenty eight years, for the purpose of insuring dwelling-houses and other buildings and personal property against loss by fire, with all the powers and privileges, and subject to all the duties, liabilities and restrictions, set forth in the thirty-seventh and forty-fourth chapters of the revised statutes, and in all subsequent acts relating to mutual fire insurance companies: provided, that said Bowditch Mutual Fire Insurance Company, said Essex Mutual Fire Insurance Company, and said Lawrence Mutual Fire Insurance Company, shall respectively continue to exist as corporations for the term of two years from the passage of this act, for the purpose of closing their affairs ; and also pro-

vided, that this act shall not affect the legal rights of any person." " Section 2. This act shall not take effect until it shall be accepted by the members of said corporations, respectively, at meetings called for that purpose." *St.* 1852, *c.* 6. By *St.* 1852, *c.* 38, passed on the 17th of March 1852, so much of this act as re- lates to the Essex Mutual Fire Insurance Company is repealed; and the members of the Essex Mechanics' Mutual Fire Insur- ance Company are constituted members of the Hamilton Mutual Insurance Company, on the terms and conditions prescribed in this act; and it is provided that the two acts shall take effect on their acceptance by the members of the corporations mentioned therein.

A notice was published, pursuant to a by-law of the Bowditch Company, of a meeting of the members of that corporation, on the 30th of said March, to act upon said acts of the legisla- ture. On said 30th of March, the members of the Bowditch Company present at said meeting voted to accept said acts; and the members of the other insurance companies mentioned therein did the like. Immediately after said acceptance, the members of said companies present proceeded to organize the Hamilton Company, by choosing as directors the same persons who had been directors of the Bowditch Company. The de- fendant was not present at said meeting, and never assented to said change, except so far as the court may hold that the vote of acceptance of the members of the Bowditch Company affected him.

It is admitted, if competent, that the business of the Hamil- ton Company has been conducted in the same way, and by the same men, as that of the Bowditch Company; that the Hamil- ton Company have paid losses happening since the change; and have laid and received assessments, and collected annual premi- ums upon other policies issued by the Bowditch Company before the change; and that none of the members of the Bowditch Company assented to said change, or were asked to assent to it, except by said vote.

When the defendant's second annual premium became due, he had notice thereof in the name of the Hamilton Company,

and was informed, by an agent of that company, of the change, and that the Hamilton Company, by reason of said statutes, were the same as the Bowditch Company, and that the Hamilton Company were responsible to him for his risk on his policy. On the 13th of November 1852 the defendant sent his policy to the office of the Bowditch Company, requesting to have it cancelled; and the plaintiffs returned it to him, informing him that it could not be cancelled until he paid the amount due for the risk from the 1st of July to the 13th of November 1852. The defendant has never paid, nor offered to pay said arrears; and his policy has not been cancelled, unless by operation of the statute.

" If, on these facts, these plaintiffs can maintain this action, judgment is to be entered for the plaintiffs for the amount claimed; unless the defendant's said offer to surrender his policy on the 13th of November 1852 releases him from that time, in which case judgment is to be entered for the plaintiffs for a proportionate amount; otherwise, judgment to be entered for the defendant."

*W. C. Endicott*, for the plaintiffs. A member of a corporation is bound by the vote of the corporation accepting a new charter, after notice to him. The corporation, béing one person in law, can accept a new charter only as a corporation. The acceptance by the majority binds all the members. The acceptance must be good for all the members, or it cannot be good for the corporation. If a member objects to the action of the corporation, his remedy is to have his policy cancelled. *Currie* v. *Mutual Assurance Society*, 4 Hen. & Munf. 350, 356. *Revere* v. *Boston Copper Co.* 15 Pick. 363. *The King* v. *Amery*, 1 T. R. 575. *The King* v. *Pasmore*, 3 T. R. 240. Angell & Ames on Corp. § 81.

It was the intention of the legislature to transfer the policies of the Bowditch Company to the Hamilton Company upon the assent of the members. The members of the Bowditch Company were members by being holders of policies, and could become members of the Hamilton Company only as holders of policies. The transfer of the policies from the Bowditch Company to the Hamilton Company was completed by the

acceptance of the new charter, and the organization of the Hamilton Company.

The assent of a member of a corporation may be direct or implied. The defendant's assent to the acceptance of the new charter is to be implied from his suffering his policy to remain uncancelled for five months after direct notice of the acceptance. His application to cancel his policy is an implied recognition of the existence of the Hamilton Company, and of his obligations to them. And there is nothing in the case to show any dissent on his part.

*J. H. Wakefield,* for the defendant.

BIGELOW, J. The contract, on which the plaintiffs seek to recover in this action, is a policy of insurance issued by the Bowditch Mutual Fire Insurance Company to the defendant, by which he agreed to pay certain annual premiums. To entitle the plaintiffs to recover therefor, by an action in their own name, they must show that this contract has been transferred to them, so that they are substituted to all the rights and powers originally belonging to said Bowditch Mutual Fire Insurance Company under said policy. There is no evidence in the case by which any assent to such transfer can be properly inferred from any act of the defendant, either as an individual, or as a member of the corporation by which the policy was originally issued. On the contrary, so far as the defendant has said or done any thing on the subject, it would seem that he had refused to sanction any such transfer. His silence and omission to act at all cannot be evidence of assent. He had a right to rest on his original contract, and was not bound to assent or dissent to any acts of others by which they sought to change his rights and liabilities under it. The plaintiffs are bound to show a contract of insurance subsisting between them and the defendant. This can be proved only by mutual affirmative acts. Mere absence of dissent on the part of the defendant will not prove a contract.

The plaintiffs, however, rely on *St.* 1852, *c.* 6, by which they were incorporated, and on the votes of the several companies therein named, accepting said act, as having substituted them in

the place of the Bowditch Mutual Fire Insurance Company, and authorized them by implication to assume the policies issued by said company, and enforce the obligations thereby created, without any individual assent on the part of the defendant. But this position cannot be maintained, upon any reasonable and just view of the provisions of the statute. The manifest purpose of the act was to create a new corporation, to be constituted and made up, in the first instance, of members of the three preëxisting corporations therein specified. As the new corporation were expressly made subject to the general laws regulating mutual fire insurance companies, no person could become a member unless he was insured by the plaintiff corporation. Rev. Sts. *c.* 37, § 30. To effect the object contemplated by the statute, therefore, it was necessary to transfer the policies, or a portion of them, issued by the three companies separately, to the new corporation, so that the contract of insurance should subsist, not with the company with which it was originally made, but with the new corporation. In this mode only could members of the old corporations become members of the new, under and by virtue of their existing policies. The plaintiffs were to become an entirely new contracting party with holders of policies previously issued by the three corporations separately; and the latter were to be discharged from their obligation and liability on their contracts of insurance to such of their members as should become insured by the plaintiffs. The result would be therefore to effect a material change in the rights and liabilities of each holder of a policy. To carry out the provisions of the act, it was necessary, not only to make a new party to each contract and absolve the original insurer therefrom, but also to make members of the old corporations members of a new corporation, with greatly increased risks and a consequent increased liability to assessments.

Such being the purpose to be effected by the statute, the question is, whether the legislature intended by its provisions to consummate this assignment to the plaintiffs of the contracts originally entered into by the three corporations, thereby substituting a new party therein, and changing the legal rights of

parties under their contracts, by the mere force and operation of the statute itself, without the assent of those whose interests were to be most materially affected by the proposed transfer. That the assent of the separate corporations was required, is not denied. It is expressly provided that "this act shall not take effect until it shall be accepted by the members of said corporations respectively, at meetings called for the purpose." This provision was doubtless intended to accomplish a double object. It was designed not only to secure the corporate assent of the three companies, but also the individual assent, as manifested by their votes, of a quorum of the members of the several companies, to the transfer and assignment of these policies to the new corporation. By assenting to the act and accepting its provisions, each member would ratify the new contract which it was intended thereby to create between the new corporation and the members of the old companies. He would be estopped, by his vote, to deny the existence of such new contract, and could not afterwards call in question the regularity or validity of the transfer of his contract to the plaintiffs, or their right to enforce its obligations in their own name. There can be no doubt that, by virtue of the statute, every member of either of the three corporations who voted for the acceptance of the act, as well as every member who otherwise signified his assent to the adoption of his policy by the plaintiffs under its provisions, entered into a new contract of insurance, by which the plaintiffs assumed the obligations and succeeded to the rights of the company with which the contract was originally made.

But further than this the provisions of the act do not go. It does not purport to transfer the contracts of parties without their assent. On the contrary, it expressly provides that "this act shall not affect the legal rights of any person." Of these legal rights, none can be plainer or more sacred than the right of a party to stand upon his contract as it was originally made, and to insist that no change shall be made, without his assent, in the parties with whom he contracted, or in the terms and conditions of his contract. It certainly requires no argument to prove, that the discharge of one contracting party and the sub

stitution of a new one, and the creation of additional and more extensive liabilities, without the consent of a party to a contract, do materially affect his legal rights, and are a serious infringement on the sanctity of contracts. The legislature, in the original act incorporating the Bowditch Mutual Fire Insurance Company, reserved no right to exercise any such power, nor was any such authority conferred on said company by the legislature, nor reserved to them by the terms of their contract with the defendant. It follows, as a necessary consequence, that the defendant, never having directly, nor by implication, assented to the transfer of his contract of insurance to the plaintiffs, comes precisely within the proviso contained in their act of incorporation. His legal rights are not affected by its provisions. His contract has never been transferred. It remains, as it was originally made, a contract with the Bowditch Mutual Fire Insurance Company, and the plaintiffs fail to show any right to maintain an action upon it in their own name to recover premiums due thereon.

It may be added, that the ground assumed by the plaintiffs, that the statute incorporating the plaintiffs operated *ex proprio vigore* to transfer contracts of insurance, made with other companies, to the plaintiffs, without any assent on the part of the persons assured, so as to substitute the plaintiffs in the place of the original insurers, involves, to say the least, a very questionable exercise of power by the legislature. Such an enactment would most seriously affect the legal rights of parties under their contracts, and tend to impair their obligation.

*Plaintiffs nonsuit.*